UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OLEG YURIYOVICH KHALIP,

       Petitioner,

v.                                      Case No. 10-13518
                                          HON. AVERN COHN

ALLA VIKTORIVNA KHALIP, a/k/a
ALLA VIKTORIVNA GALKIN

       Respondent.

_____/

## MEMORANDUM AND ORDER GRANTING PETITION TO RETURN MINOR CHILDREN AND STAYING EFFECTIVENESS OF ORDER FOR 30 DAYS

### I. INTRODUCTION

This is a petition for the return of minor children pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the Convention) and the International Child Abduction Remedies Act (ICARA). 42 U.S.C. §§ 11601-11610. Petitioner Oleg Yuriyovich Khalip (Petitioner) seeks the return of his two minor children, IOK and KOK, claiming that the children's mother, Respondent Alla Viktorivna Khalip, a/k/a Alla Viktorivna Galkin, (Respondent), wrongfully removed them from the Ukraine to Michigan.

The petition is GRANTED. However, in light of Respondent's May 13, 2011, supplemental filing, (Doc. 30), submitted on the eve of the Court's decision, the effectiveness of this decision will be stayed for 30 days.

Particularly, the Court recognizes that a July 7, 2010, decision from a district court in the Ukraine, (Doc. 10-1, pp. 25, 26), which ordered the immediate return of the children

appears to have been effectively stayed by the Highest Specialized Court of Ukraine.[1]  The

Highest Specialized Court of Ukraine "RULED":

> (1) [t]o start cassation proceedings, concerning the claim of [Petitioner]
> towards [Respondent] . . . concerning separation of the children, their return
> to the permanent place of residence to Ukraine and determination of the
> place of residence of the children with [Petitioner]";
>
> (2) [t]o suspend execution of decision of Leninskiy district court of Zaporizhya
> city dated July 07, 2010 till termination of the cassation proceedings of the
> case";
>
> (3) "[t]o demand the mentioned civil case from Leninskiy district court of
> Zaporizhya city"; and
>
> (4) "[t]o send the copies of the cassation appeal and the enclosed materials
> of the case to the persons who participate in the case[,] to explain their right
> to file an objection to cassation appeal till May 20, 2011."

(Doc. 30-3, p. 4).

Based on the above ruling, the nature of the future proceedings in the Ukraine courts

is not altogether clear.  As it relates to the present petition, under Article 15 of the

Convention:

> judicial or administrative authorities of a Contracting State may, prior to the
> making of an order for the return of the child, request that the applicant obtain
> from the authorities of the State of the habitual residence of the child a
> decision or other determination that the removal or retention was wrongful
> within the meaning of Article 3 of the Convention, where such a decision or
> determination may be obtained in that State. The Central Authorities of the
> Contracting States shall so far as practicable assist applicants to obtain such
> a decision or determination.

Id.

---

[1]In the Ukraine, "High Specialized Courts shall consider cassation complaints of respective court jurisdiction; analyze, study, and cumulate court practice; assist lower courts to ensure identical application of Constitutional norms and laws in court practice; perform other functions."  Martindale-Hubbell Law Digest, Ukraine, 11 (2008).

The Court should also consider the "length of time it will take to obtain the required documentation." Hague International Child Abduction Convention; Text and Legal Analysis, Department of State, March 26, 1986, at 14-15.  "In countries where such a determination can be made only by a court, if judicial dockets are seriously backlogged, compliance with an Article 15 order could significantly prolong disposition of the return petition, which in turn would extend the time that the child is kept in a state of legal and emotional limbo."  Id.

"Nevertheless, American courts will normally accord considerable deference to foreign adjudications as a matter of comity."  Diorinous v. Mezitis, 237 F.3d 133, 142 (2d Cir. 2001)(citing Hilton v. Guyot, 159 U.S. 113 (1895)).  "In particular, we have observed that comity 'is at the heart of the [Hague] Convention.'"  Id. (quoting Blondin v. Dubois, 189 F.3d 240, 248 (2d Cir. 1999)); see also Friedrich v. Friedrich, 78 F.3d 1060, 1068-69 (6th Cir. 1997)(determining that American courts must place trust in the court system in the abducted-from country).

In the interest of comity, the Court has given considerable weight to the Ukraine court decisions in deciding whether the children were wrongfully removed and should therefore be returned to Petitioner; the Highest Specialized Court's decision is no different. On the other hand, the Court has an obligation under the Convention to make an expeditious decision.  With these conflicting considerations in mind, effectiveness of this decision is STAYED for 30 days to allow the parties the opportunity to further illuminate the status of the legal proceedings in the Ukraine, including the time it will take the courts in the Ukraine to resolve the pending proceedings.[2]

---

[2]As to Respondent's supplemental filing relating to the assertion that the Ukrainian courts are corrupt, (Doc. 30-2), the Court is not disposed to render its

## II. BACKGROUND

### A.

Petitioner was born in 1964 in the Ukraine.  He has been a citizen and resident of the Ukraine since his birth.  Respondent was born in 1977 in the Ukraine.  She is a native and citizen of the Ukraine, where she resided until June 11, 2010, at which time she moved to her current residence in Michigan.  Petitioner and Respondent were married on January 25, 2002.  Their two children were born in the Ukraine; IOK in 2002 and KOK in 2003.  On November 20, 2009, Petitioner and Respondent divorced; a custody agreement was not reached during the divorce proceedings.  On June 14, 2010, Respondent remarried to Leonardo Alex Galkin (Galkin).  Respondent, Galkin, and the two children currently live together in Ann Arbor, Michigan.

### B.

On May 11, 2010, Petitioner signed a notarized application, which gave consent to Respondent to permanently move IOK and KOK to the United States.  (Doc. 11-14).  On June 1, 2010, Petitioner signed a notarized application revoking his consent because, according to Petitioner, Respondent breached an oral agreement related generally to the upbringing of the children and their permanent residence after the age of 16.  (Doc. 6, p. 7).  According to Petitioner, he personally served the revocation application on Respondent on June 8, 2010.  In support, he proffers three affidavits from witnesses who say that they overheard the conversation between Petitioner and Respondent.  (Doc. 6, pp. 20, 23, 26).  Respondent, on the other hand, disputes that she was ever served with Respondent's

decision based on such generic commentary.

4

revocation.

On June 10, 2010, Respondent moved to Michigan with IOK and KOK, where they have permanently resided since.  According to Petitioner, Respondent picked up the children from school on June 10, 2010, and secretly took them to Michigan without Petitioner's knowledge.  According to Respondent, Petitioner agreed to the move. Respondent further asserts that upon their arrival in Michigan, she provided Petitioner with telephone and email contact information.  She says that the children had regular contact with Petitioner via phone and video chat and that Petitioner visited them twice in Michigan within two months.  Petitioner does not admit or deny the visits.

### C.

Under Ukrainian law, each spouse has equal rights and obligations in the marriage and family.  Article 51, Ukraine Constitution.  The Family Code of Ukraine establishes the equal rights and duties of the parents with regard to a child whether they were married or not.  Article 141, Ukraine Family Code.  Particularly, a divorce does not influence on the extent of the parental rights an duties.  Id.  A child's residence under the age of ten shall be determined by the consent of his or her parents.  Article 160, Ukraine Family Code.  If a mother and a father who live separately have not come to agreement in the question where the minor children should live, their dispute may be resolved by a court.  Article 161, Ukraine Family Code.  Finally, if one of the parents or any other person willfully, without consent of another parent or another persons, with whom the minor child lived according to the law or by the court decision, change the place of his or her residence, also by means of abduction, a court, upon application of the interested person, has the right to deliver immediately the decision on depriving the child and his or her return to the last place of

5

residence.  Article 162, Ukraine Family Code.

Based on the described legal framework, on July 7, 2010, a Ukraine district court entered a decision in response to Petitioner's consent revocation application, which certified Petitioner's revocation and held that Respondent had illegally taken the children without Petitioner's consent.  (Doc. 1-3, pp. 5-8).  The Ukrainian appeals courts affirmed the lower court's decision, (Doc. 10-1, pp. 5-7, 12-16), after which the Ukranian district court ordered immediate taking of the children.  (Id. at pp. 25, 26).  On February 2, 2011, Respondent appealed to the Highest Specialized Court of Ukraine.  As stated above, the high court has accepted the appeal, effectively staying the lower court's rulings.  (Doc. 30-3).

**D.**

On September 3, 2010, Petitioner filed the instant petition.  On November 12, 2010, the Court entered a stipulated restraining order in which Respondent agreed not to leave the jurisdiction or remove IOK or KOK from the jurisdiction.  (Doc. 8).  On March 9, 2011, the Court heard oral argument on the petition.

On March 23, 2011, the Court interviewed the children in chambers. Particularly, the Court conducted in person interviews with both children individually, with himself and a law clerk present, and without either parent or their attorneys.   Both children appeared comfortable and at ease during the interview and each articulated the reasons that they do not want to return to the Ukraine: generally, because they recalled that the Ukraine was dirty and preferred the United States, which they said was cleaner and bigger.  KOK stated that she did not want to be without her mother, and both said that they were not told what to say at the interview.  Rather, they said they were told to discuss their feelings.

6

Also on March 23, 2011, Petitioner moved the Court to appoint an independent psychologist to interview the children.  (Doc. 15).  The Court granted the motion, and ordered a psychologist to "determine and report to the Court and both parties whether or not the children have attained an age and degree of maturity for the Court to take account of their views."  (Doc. 19).  If the answer to the first question was "yes," the psychologist was further ordered to "determine and report the children's views regarding returning to the Ukraine to live."  (Id.).  The psychologist's report was filed with the Court, and both parties, on April 19, 2011.  In response to the Court's first question, the psychologist stated:

> In my professional opinion, speaking as a psychologist, neither child (IOK or KOK) is at his or her present age and stage of cognitive and emotional development capable of conducting a mature (in the sense of: thoughtful, rational, and reasonably balanced and comprehensive) analysis of his or her own best interests with respect to the question of returning to live in the Ukraine with their father.

The psychologist also provided additional analysis to support his conclusion, as follows.

> Both IOK and KOK are bright children who are generally capable of understanding reasonably complicated social situations and making reasonable judgments about them.  They are also sufficiently fluent in English that language problems do not pose much of a barrier to their expressing their views.  Nevertheless, when it comes to explaining why they want to remain in the U.S. with their mother and not return to the Ukraine with their father, their reasoning is strikingly concrete, simplistic, unreflective, arbitrary, and immature.

After reviewing the psychologist's report, the Court scheduled a hearing with both parties to hear final oral argument on the matter.  The matter is now ready for decision.[3]

## III. ANALYSIS

---

[3]The Court relies on the record to make its decision.

## A. LEGAL STANDARD[4]

Both the United States and the Ukraine are signatories to the Convention, which seeks "to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence . . . ." See Preamble, Convention.  The Convention is intended to "restore the pre-abduction status quo and to deter parents from crossing borders in search of a more sympathetic court."  Friedrich, supra, at 1064.

If a child is wrongfully removed, the court "shall order the return of the child forthwith."  Article 12, Convention.  The intended result is that a final decision on custody be made by the authorities in the country of the child's habitual residence prior to his or her wrongful removal.

## B. WRONGFUL REMOVAL

To obtain relief under the Convention, Petitioner must first establish by a preponderance of the evidence that the children were "wrongfully removed."  Article 12, Convention; 42 U.S.C. § 11603(e)(1)(A).  The removal of a child from one country to another is wrongful when:

> a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or

---

[4]Although both parties style their briefs as summary judgment motions, the Court follows the legal standards set forth under the Convention and ICARA and grants appropriate relief consistent with the treaty and relevant statutory provisions. See Patricia Hoff, The Hague Convention on the Civil Aspects of International Child Abduction: A Curriculum for American Judges and Lawyers, American Bar Association Publication, October 1997, at 51 ("No specific form of civil action is required to commence a Hague return proceeding . . . [w]rits of habeas corpus may best accomplish this goal, but other forms of action may achieve similar results").

retention; and

b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Article 3, Convention.

Particularly, Petitioner must show that 1) he was, or otherwise would have been, "exercising custody rights to the child[ren] under that country's law at the moment of the removal," and 2) the removal was from the child's habitual residence. Friedrich, supra, at 1064.

Here, Respondent concedes that the Ukraine, where the children were born and have always lived, was the habitual residence of the children prior to their removal. (Doc. 11, p. 7). Thus, Petitioner must only establish that he was exercising valid rights of custody under Ukranian law at the time of removal. As stated, the Convention requires the Court to look to Ukranian law to determine whether Petitioner had and was exercising valid custody rights. See Friedrich, supra, at 1064. The Court may take notice of decisions from the Ukrainian judicial system. See Article 15, Convention; 42 U.S.C. § 11601(b)(2).

To demonstrate that he was exercising valid custody rights at the time the children were removed to Michigan, Petitioner cites his consent revocation application and the decisions from the Ukraine district and appellate courts, which certify the revocation and have ordered the children's return. He also cites to an expert report, which states that under the present set of facts Petitioner's revocation is "entirely consistent with Ukrainian family legislation." (Doc. 10-1, p. 63).

In response, Respondent says she did not wrongfully remove the children because Petitioner consented to the children's permanent change of residency, relying on the May

9

11, 2010, consent application. (Doc. 11-14). She asserts that she was not aware of Petitioner's June 1, 2010, revocation at the time that she moved with the children on June 10, 2010. Further, Respondent says that she did not "steal" the children on that day as Petitioner suggests. Rather, she moved with them as planned, after which she established immediate contact between the children and Petitioner by telephone, email, and video chat. The current petition, according to Respondent, is the product of Petitioner "changing his mind" in an attempt to punish her because she refused to waive her right to her share of their marital property, which she says is not sufficient to prove wrongful removal under Jenkins v. Jenkins, 569 F.3d 549, 555 (6th Cir. 2009) (holding no wrongful removal when mother consented to move to the United States, but then had a change of heart and wanted to take child back to Israel). In sum, Respondent says that Petitioner has not met his burden to prove that the children were wrongfully removed. The Court disagrees.

Based on the evidence, particularly the consent revocation document, which was notarized before Respondent moved with the children, the Petitioner has submitted sufficient evidence to show that at the time the children were removed he was exercising his custody rights. Further, the surreptitious nature of Respondent's move with the children – without Petitioner present and executed in an unplanned manner by picking up the children from school without the Petitioner's knowledge or that of the children's caretaker – weighs in favor of Petitioner's assertion that Respondent moved without his consent. See Friedrich, supra, at 1069 (relating to whether the petitioner consented to removal, "the deliberatively secretive nature of [respondent's] actions is extremely strong evidence that [petitioner] would not have consented to the removal of [the child]").

Finally, even if Respondent was not aware of the revocation, it does not take away

10

from the fact that Petitioner exercised his rights by expressly revoking his consent in a notarized writing, which he then filed in the Ukranian courts for certification. <u>See</u> Article 3 (removal of a child from one country to another is wrongful when at the time of removal those rights were actually being exercised, either jointly <u>or alone</u>, or would have been so exercised but for the removal or retention) (emphasis added). In other words, this is not a case where Petitioner simply changed his mind.

Thus, Petitioner has established by a preponderance of the evidence that the children were wrongfully removed.

## C.  AFFIRMATIVE DEFENSE: CONSENT OR ACQUIESCENCE

Next, because Petitioner has met the <u>prima facie</u> burden of wrongful removal, the Court must order return of the children unless Respondent can establish a defense. <u>Friedrich</u>, <u>supra</u>, at 1067. There are four affirmative defenses set out in the Convention, which are narrowly construed. <u>Id.</u> Respondent raises the fourth, which requires her to prove by a preponderance of the evidence that Petitioner was not actually exercising custody rights at the time of removal or retention or had consented to or subsequently acquiesced in the removal or retention. Article 13a, Convention; 42 U.S.C. § 11603(e)(2)(A) & (B).

Particularly, Respondent says that Petitioner consented to the removal when he signed the consent application, and that he subsequently acquiesced in the removal of the children when he visited them in Michigan on two occasions. Further, Respondent says that she and Petitioner discussed the move several times, that he authorized it several times, and that he agreed to attend mediation in Michigan to draft a parenting schedule, which she says indicates that he was agreeable to the children staying while the custody

11

agreement was established.  In support of these assertions, Respondent proffers affidavits from herself and her husband Galkin.  (Docs. 11-12, 11-13).  Respondent also relies on Friedrich, supra, in which the Sixth Circuit held that "acquiescence under the Convention requires either: an act or statement with the requisite formality, such as testimony in a judicial proceeding; a convincing written renunciation of rights; or a consistent attitude of acquiescence over a significant period of time."  Id. at 1070.  Respondent says that under the Sixth Circuit's standard, the supporting evidence is sufficient to prove that Petitioner acquiesced in the removal of the children.

In response, Petitioner argues that he did not consent to the children's removal and again proffers the consent revocation document and the Ukranian district and appellate court decisions to support his assertion.  Petitioner does not specifically address Respondent's claims that he visited Michigan and had regular contact with the children after the move.  Rather, he simply denies that he acquiesced to the children's removal and relies on the above described evidence which he says proves that he legally revoked his consent prior to the children's removal.  In other words, Petitioner argues that Respondent has not met her burden by a preponderance of evidence to successfully raise this affirmative defense.  The Court agrees.

On balance, the evidence weighs in Petitioner's favor.  Particularly, the consent revocation document and the Ukranian district and appellate court decisions persuade the Court that Petitioner was actively exercising his custodial rights before and after the children were removed.  Also, as stated above, the manner in which the children were removed supports the inference that Petitioner did not consent to the children's removal.  Further, Petitioner's visits to Michigan and communication over email and through video

chat fails to demonstrate that he acquiesced in the removal.  Finally, the affidavits of Respondent and Galkin, which attempt to demonstrate that Petitioner agreed to mediation in Michigan, standing alone, are uncorroborated evidence and insufficient to show by a preponderance of evidence that Petitioner acquiesced.

Thus, Respondent has not met her burden and this exception does not apply.

### D.  EXCEPTION: CHILDREN'S OBJECTION

In addition to the Convention's four affirmative defenses, "there is also a fifth consideration, left to the discretion of the judicial or administrative authority, which allows for refusal to order the return of a child where 'the child objects to being returned and has attained an age and degree of maturity at which is appropriate to take account of its views.'" De Silva v. Pitts, 481 F.3d 1279, 1285 (10th Cir. 2007); Article 13, Convention. On this ground, Respondent argues that the present petition should be denied because the children, who Respondent says are of a sufficient age and maturity, object to their return to the Ukraine.

"An analysis of whether to apply the 'wishes of the child' exception requires consideration of the goals of the Convention and a determination of whether the child is of sufficient age and maturity for his or her views to be taken into account." Tsai-Yi Yang v. Fu-Chiang Tsui, 499 F.3d 259, 279 (3d Cir. 2007) (internal citation omitted).  "The Convention does not set an age at which a child is automatically considered to be sufficiently mature, rather the determination is to be made on a case-by-case basis." Id. "Given the fact-intensive and idiosyncratic nature of the inquiry, decisions applying the age and maturity exception are understandably disparate." Id. (internal citation omitted).  "In making its determination, a court should also consider whether a child's desire to remain

or return to a place is the product of undue influence, in which case the child's wishes should not be considered.  Id. (internal citations and quote marks omitted).

Here, Respondent says that IOK and KOK, now ages 8 and 7, are intelligent, articulate, and mature, and thus of an age that the Court should consider their views.  In support, she proffers six affidavits from members of the community in which they live, stating that the children are in a stable home and supporting her assertion that they would choose to remain in Michigan if given the option.  (Docs. 14-6, 14-7, 14-8, 14-9, 14-10, 14-11).

Petitioner rejects Respondent's claim and argues that courts typically consider a child's objections only when the child is in his or her teenage years, which is not the case here.  Petitioner cites De Silva, supra, in support of his proposition, arguing that IOK and KOK are too young to know whether they should be returned to the Ukraine and asserting that the children may have been exposed to undue influence by Respondent in reaching their decisions to stay in Michigan.

As stated previously, the Court conducted in person interviews with each child to gain a better understanding of their age and maturity related to this exception.  While the Court was impressed by the children's poise in such an untenable situation, the Court's limited role in this circumstance is to make a determination only as to whether the children should be returned to their "status quo" in order to determine final custody rights.  Friedrich, supra, at 1064.  Particularly, the Court is tasked with determining whether based largely on the children's reasons for objecting to their return they are equipped with a level of maturity to voice a meaningful objection to return.

In this light, the Court finds that IOK and KOK have not reached the requisite level

14

of maturity. Indeed, as one would expect from children of this age, each articulated a natural desire to stay with their mother in an environment that they have become accustomed to and in which they are now comfortable. On the other hand, their stated reasons and responses also reveal that they are not mature enough to understand the full scope of this situation in order to prevent being returned. See Tsai-Yi Yang, supra, at 279 (upholding a district court decision which found that a ten year old was not of sufficient maturity when she was unable to articulate "particularized objections to returning to Canada, but rather [] indicated that she possessed a more generalized desire to remain in Pittsburgh similar to that of any ten-year-old having to move to a new location"). This finding is also consistent with the psychologist's report, which, while acknowledging the children's poise and intelligence, also determined that they are not of an age and maturity that a Court should consider their views.

Accordingly, the Court finds that the age and maturity defense does not apply. However, the Court's decision in this instance should not dissuade a Ukrainian custody court from strongly considering the children's views. Indeed, the Court encourages their views to be considered within that appropriate forum.

## IV. CONCLUSION

The obligations of the Court in adjudicating a petition under the Convention and ICARA require that it be mindful of two overriding principles. First, the Court "has jurisdiction to decide the merits of an abduction claim, but not the merits of the underlying custody dispute. Blanc v. Morgan, 721 F. Supp. 2d 749, 757 (W.D. Tenn. 2010); ICARA, § 4(b); 42 U.S.C.A. § 11603(b). Second, the Convention is "generally intended to restore the pre-abduction status quo and to deter parents from crossing borders in search of a

15

more sympathetic court." Id.

Accordingly, for the above reasons, it is ORDERED that the parties' children, IOK and KOK, be returned to the Ukraine, pursuant to the Convention and ICARA.

The order is subject to the following undertakings:

1. Petitioner is encouraged to work in cooperation with Respondent to execute a responsible return schedule for the children, particularly as it relates to the children's school calendar;

2. Respondent may accompany the children on the return trip to the Ukraine. Upon arrival in the Ukraine, Petitioner and Respondent shall in cooperation arrange suitable living arrangements for the children;

3. If Respondent chooses not to return to the Ukraine with the children, Respondent must give the children's passports and other travel documentation to Petitioner within a reasonable mutually agreed upon time.

SO ORDERED.


Dated:  May 17, 2011                    _S/Avern Cohn_____
                                        AVERN COHN
                                        UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, May 17, 2011, by electronic and/or ordinary mail.

                                        _S/Julie Owens_____
                                        Case Manager, (313) 234-5160


16